## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2018, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of Z.C. and L.C. (Minor Children) and

N.S. (Mother) and J.C. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

February 13, 2018

Court of Appeals Case No. 85A02-1710-JT-2386

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause Nos. 85C01-1612-JT-16, 17

**Crone, Judge.**

# Case Summary

[1]   N.S.("Mother") and J.C. ("Father") (collectively "Parents") appeal the trial court's order involuntarily terminating their parental rights to their minor children, Z.C. and L.C. (collectively "the Children"). We affirm.

# Facts and Procedural History

[2]   Parents are the biological parents of Z.C., born February 2, 2007, and L.C., born May 21, 2014. In July 2015, the Wabash County Department of Child Services ("DCS") was contacted by the Wabash County Drug Task Force following a raid at Parents' home. At the time, Mother was incarcerated and Father and the Children were residing in the home. The Children were removed from the home due to the discovery of drugs and paraphernalia, as well as the deplorable conditions of the home. DCS filed petitions alleging that the Children were children in need of services ("CHINS"). Initial hearings were held, and the Children were placed with their paternal grandmother. After only a few days, the Children's disposition was changed and they were placed in foster care where they have remained since.

[3]   In September 2015, both Mother and Father appeared at a hearing and each admitted that the Children were CHINS. The trial court entered a CHINS adjudication on October 9, 2015, and following a dispositional hearing, the trial court ordered the Parents to participate in a variety of services, the majority of which were centered on "their substance abuse issues and chaotic lifestyle."

Appellants' App. Vol. 2 at. 65.  However, over the next year, neither Mother nor Father made substantial or meaningful progress and therefore, DCS filed petitions to terminate both Mother's and Father's parental rights in December 2016.  Following a termination hearing held in September 2017, the trial court entered its order finding in relevant part: [1]

> Mother has been in and out of jail for a great portion of the time these proceedings have been pending, restricting her ability to engage, in any meaningful way, in services. She was just recently released. Mother now professes her desire to get clean and stay clear and to do whatever it takes. Sadly, her desire to do so, even if sincere, is too little, too late. Z.C. and L.C. are twisting in the wind. Further, Mother's poor history of engaging in services even when she was not incarcerated reflects her inability to do what she needs to do to be a parent or to comply with services. Her incarcerations were a result of her actions and she cannot now hide behind that as a reason for not participating in services. Mother even testified "I feel like I have had plenty of chances." She has, all to no avail.
>
> Father has had his share of legal problems as well and his substance abuse continued to inhibit his ability to engage, in any meaningful way, in services.  Not long after the petitions to terminate parental rights were filed, Father relapsed. While he sought treatment, he has yet to overcome his demons. To Father's credit, at least according to his testimony, he has been sober for approximately the last 8 months. While he has engaged in and even completed some services, they have not resulted in any meaningful change. He resides in his mother's home. His work history is sporadic. He continues to minimize his

---

[1] We note that the trial court refers to the parties by their full names.  We use "Mother," "Father," and each minor child's initials where appropriate.

responsibility for the [C]hildren's removal from his care. While his intentions appear to be sincere, he is ill equipped to parent any child. He continues to offer a myriad of excuses for his inability to engage in some services, submit to drug testing and see his children. His participation in the last 30 days has been nil.

…

Z.C. and L.C. are thriving in foster [care]. Each have their own serious issues to deal with. Being older, Z.C. has lived more of her life in chaos than has L.C. and, as a result, she has [bore] the brunt of Father and Mother's problems. Z.C. is very angry at her parents and rightfully so. Prior efforts at reunification were constantly met with destabilizing setbacks, occurring as recently as April of this year. Z.C.'s therapist wondered how much more she [Z.C.] can stand. Z.C. and L.C. need permanency, which neither Father or Mother can provide. Both Father and Mother acknowledge they have issues. However, neither seem to appreciate the seriousness of their shortcomings, past and present, which resulted in the removal of the [C]hildren in the first place and which prevent reunification. Each appear to be kind[-]hearted and well[-]intentioned. However, their history speaks volumes about their ability to parent, both currently and in the foreseeable future.

*Id*. at 66-67.

[4] Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside the home will not be remedied by either Parent; (2) there is a reasonable probability that the continuation of the

parent-child relationship poses a threat to the well-being of the Children;[2] (3) termination of the parent-child relationship between both Parents and the Children is in the Children's best interests; and (4) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of the petitions to terminate parental rights by clear and convincing evidence and therefore terminated both Mother's and Father's parental rights. Both Parents now appeal.

## Discussion and Decision

[5] "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.* A petition for the involuntary termination of parental rights must allege in pertinent part:

   (B) that one (1) of the following is true:

---

[2] Specifically, the trial court concluded that continuation of the parent-child relationship "would be detrimental to [the Children's] physical and mental well-being." Appellants' App. Vol. 2 at 67.

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[6] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to

assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[7] Parents challenge the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside the home will not be remedied, that termination of their parental rights is in the best interests of the Children, and that DCS has a satisfactory plan for the care and treatment of the Children.

## Section 1 – Parents fail to challenge the trial court's conclusion that continuation of the parent-child relationship poses a threat to the well-being of the children.

[8] It is well-settled that because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court need only find that one of the three factors has been established by clear and convincing evidence and it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed. *See In re A.D.*, 31 N.E.3d 1048 (Ind. Ct. App. 2015). We note that the trial court here concluded both that (1) there is a reasonably probability that the conditions resulting in the Children's removal and continued placement outside the Parents' home will not be remedied and (2) that there is a reasonable probability that the continuation of the parent-child relationship poses a threat

to the well-being of the Children. On appeal, Parents only challenge the evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal and continued placement outside the home will not be remedied and they make no evidentiary challenge to the trial court's conclusion that continuation of the parent-child relationship poses a threat to the well-being of the Children. Because the unchallenged conclusion, standing alone, satisfies the statutory requirement listed in Indiana Code Section 31-35-2-4(b)(2)(B), *see In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *trans. denied* (2000), *cert. denied* (2002), we need not address the sufficiency of the evidence to support the trial court's conclusion regarding the reasonable probability of unchanged conditions.

## Section 2 – Sufficient evidence supports the trial court's conclusion that termination of both Mother's and Father's parental rights is in the Children's best interests.

[9]     Parents assert that the evidence does not support the trial court's conclusion that termination of their parental rights is in the Children's best interests. In considering whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id*. The trial court need not wait until the child is irreversibly harmed before terminating parental rights. *Id*. "The historic inability to provide adequate

housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). The testimony of service providers may support a finding that termination is in the child's best interests. *McBride,* 798 N.E.2d at 203.

[10] Parents concede that "DCS established via testimony of a number of witnesses, that they believed it to be in the best interest of the Children that the parent-child relationship be terminated." Appellants' Br. at 22. Indeed, family therapist Sandra Duecker testified regarding Z.C.'s extreme emotional distress, stating that it was in her best interests if parental rights were terminated and "she was allowed to be living in a home that had all of those things that she needs, which is stability and soothing calmness, predictability … nurturance, … all those things that are an important part of a child's life." Tr. Vol. 2 at 59. Family case manager Jennifer Lane opined that termination of Mother's and Father's parental rights to both Children was warranted because of the "substantial amount of time" that neither parent has been able to make positive changes and that at this point "the [C]hildren deserve permanency." *Id.* at 159. Even Mother testified that the Parents had not been stable and/or capable of taking care of the Children and she admitted that the Children "have waited long enough" for such stability. *Id.* at 106.

[11] Parents point to no contrary evidence in the record, and their argument regarding best interests is sparse to say the least. Sufficient evidence supports

the trial court's conclusion that termination of both Mother's and Father's parental rights is in the Children's best interests.

## Section 3 – Sufficient evidence supports the trial court's conclusion that DCS has a satisfactory plan for the care and treatment of the Children.

[12]   Finally, Parents contend that DCS failed to present clear and convincing evidence that it has a satisfactory plan for the care and treatment of the Children.  While the trial court must find that there is a satisfactory plan for the care and treatment of the child, "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). Generally, adoption is a satisfactory plan. *Id*.

[13]   Again, Parents make virtually no argument on this issue, conceding that "[s]everal witnesses testified that the plan for the Children was adoption" and that "case law is not in their favor in regards to arguing against adoption being a satisfactory plan" for the care and treatment of the Children.  Appellants' Br. at 22.  Sufficient evidence supports the trial court's conclusion that DCS has a satisfactory plan for the care and treatment of the Children, which is adoption.

[14]   In sum, DCS presented sufficient evidence to support the trial court's termination of parental rights.  Accordingly, the trial court's termination order is affirmed.

Affirmed.

Robb, J., and Bradford, J., concur.